# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**West Virginia Department of Health and Human Resources,**
**Respondent Below, Petitioner**

**v.)  No. 23-755** (Intermediate Court of Appeals 23-ICA-15)

**Patricia W.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

The petitioner herein and respondent below, the West Virginia Department of Health and Human Resources ("DHS"),[1] appeals from a memorandum decision filed by the Intermediate Court of Appeals ("ICA") on November 1, 2023.[2] *See Patricia W. v. W. Va. Dep't of Health & Hum. Res.*, No. 23-ICA-15, 2023 WL 7202664 (W. Va. Ct. App. Nov. 1, 2023). Reversing the decision of the West Virginia Department of Health and Human Resources Board of Review ("Board of Review"),[3] the ICA determined that the statements Patricia W.[4] made when the DHS removed the subject children from her home did not constitute emotional abuse. *See generally* W. Va. Code § 49-1-201 (defining "abuse" in child abuse and neglect proceedings). Like the ICA, we conclude that the Board of Review clearly erred when it found that the conduct at issue met the

---

[1] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of the instant proceeding, the agency is now the DHS.

[2] The DHS is represented by Attorney General John B. McCuskey and Assistant Attorney General Chaelyn W. Casteel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Patricia W. is represented by counsel Ambria M. Britton.

[3] The Board of Review is now the Office of Inspector General, Board of Review. *See* note 1, *supra*.

[4] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

statutory definition of "abuse"; therefore, affirmance of the ICA by memorandum decision is proper. *See* W. Va. R. App. P. 21.

This case originated in July 2020 as a Child Protective Services ("CPS") referral to investigate alleged physical abuse of children by their kinship caregiver, Bryan W., who is Patricia's husband.[5] The four children at issue in this case, who ranged in age from eight months old to six years old at the time of the relevant events, were residing with Patricia and Bryan in a fictive kinship placement as a result of abuse and neglect proceedings against their biological parents.[6] Two CPS workers arrived, with a law enforcement officer, to remove the four children from Patricia and Bryan's home and retrieve their belongings. The law enforcement officer recorded the entire exchange with his body camera. Initially, Patricia was cooperative, but, upon Bryan's return to the home, she began speaking more loudly, at times yelling at the CPS workers and law enforcement officer, and referred to the children as "hellions" and "little liars." She then asked Bryan to get the children, three of whom were in rooms at the other end of the house. Only the youngest kinship child, an infant, was in the entry room where the heated exchange took place, and he was asleep in an infant swing during this encounter. As Patricia was helping gather the children, she can be heard on the police bodycam footage saying, "You did this," presumably to the oldest kinship child, although the video is difficult to hear and does not show this exchange.[7] Shortly thereafter, the oldest child can be heard crying, and she continues crying throughout the

---

[5] The referral alleged that Bryan had used excessive corporal punishment against the three oldest children despite his agreement to the DHS's no physical discipline policy when the DHS placed the children with him and Patricia. The DHS, which retained legal custody of the children, had placed the children in a fictive kinship placement with Patricia and Bryan in May 2020 because they were family friends of the children's parents. *See generally* W. Va. Code § 49-1-206 (defining "fictive kin").

[6] Two additional children, who were Patricia and Bryan's biological grandchildren, were also residing in the home through a private guardianship arrangement. The DHS did not remove the two grandchildren from the home in July 2020 because these children were not in the DHS's legal custody, and, thus, different standards governed the DHS's ability to remove them. Ultimately, the DHS removed the two grandchildren from Patricia and Bryan's home in December 2021, but the exact reason for their removal is not clear from the record due to the confidential nature of that case.

[7] The record indicates that the oldest kinship child sometimes spoke untruthfully and that Patricia had attempted to request psychological services for the child to address these concerns; ultimately, Patricia scheduled a psychological appointment for the child that was not kept because the DHS removed the children from the home. Patricia also alleged, during the underlying proceedings, that the supervisor of the kinship children's visits with their biological mother purportedly told the oldest kinship child, during a scheduled visit, that if she claimed that Patricia and/or Bryan had mistreated her while in their care, she would be removed from their home and reunited with her biological mother. Patricia alleged that the children's biological mother informed her of this purported exchange between the visitation supervisor and the oldest kinship child.

2

removal process until Patricia buckles her into her car seat and says reassuring words to calm her down, reminding her to tell the truth. Patricia also attempted to provide care instructions to the CPS workers for some of the children, and spoke calmly and soothingly to the other three children as they were placed in the CPS workers' vehicles.

Thereafter, the DHS substantiated allegations of emotional abuse of the removed children by Patricia based upon the CPS workers' conversations with the two oldest children and the workers' observations of Patricia's behavior at the time of removal.[8] Patricia protested the DHS's substantiation of emotional abuse, and the Board of Review held a hearing on her appeal, upholding the DHS's emotional abuse finding. She then appealed to the circuit court, which remanded the case to the Board of Review to consider the newly acquired bodycam footage. On remand, the Board of Review, by amended order entered December 15, 2022, again upheld the DHS's substantiation of emotional abuse by Patricia. Following this ruling, Patricia appealed to the ICA, which reversed the Board of Review. *See Patricia W.*, 2023 WL 7202664. The ICA determined that the record evidence did not support a finding that Patricia's statements during the children's removal from her home met the statutory definition of "abuse." *See* W. Va. Code § 49-1-201. The DHS now appeals to this Court.[9]

The ICA, in its consideration of the Board of Review's order, employed the standard of review supplied by the Administrative Procedures Act for the judicial review of administrative rulings:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

---

[8] The DHS also substantiated the referred allegations of physical abuse by Bryan following the CPS workers' conversations with the children.

[9] Bryan also challenged the substantiation of physical abuse, following the same path of appeals as Patricia. However, the ICA upheld the DHS's findings that he had physically abused the children. *See Bryan W. v. W. Va. Dep't of Health & Hum. Res.*, 23-ICA-16, 2023 WL 7202957 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision). Bryan did not appeal from the ICA's decision, and we do not consider the merits of his case in the instant appeal, which solely concerns the emotional abuse allegations against Patricia.

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g)(1-6). This statute additionally provides, in relevant part, that "[t]he judgment of the circuit court or the Intermediate Court of Appeals, whichever is applicable, shall be final unless reversed, vacated, or modified on appeal to the Supreme Court of Appeals of this state[.]" W. Va. Code § 29A-5-4(h). With respect to an appeal from an administrative order, we have held:

> Upon judicial review of an appeal of a decision of the West Virginia Board of Review to the Intermediate Court of Appeals of West Virginia, under West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022):
> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). This same standard applies to our review on appeal. *Cf. id.*, 250 W. Va. at 512, 905 S.E.2d at 530, Syl. Pt. 3 ("On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.").

The sole error assigned by the DHS concerns the ICA's determination that Patricia's actions at the time of the children's removal from the home did not constitute emotional abuse and resultant conclusion that the Board of Review clearly erred by upholding the DHS's substantiation of emotional abuse. Although the DHS's initial removal was based upon allegations that Bryan had physically abused the subject children,[10] the removal encounter quickly escalated into a heated

---

[10] *See* note 9, *supra*.

verbal exchange between Patricia, Bryan, the CPS workers, and the accompanying law enforcement officer, during which Patricia made the statements at issue in this case.

In support of its contention that Patricia's isolated statements constituted emotional abuse, the DHS relies on its discipline policy for kinship/relative placements that Patricia signed when the DHS placed the children with her and Bryan.[11] Specifically, this policy states:

> The kinship/relative provider will comply with the discipline policy. Punishments of a physical nature, including hitting on the body in any manner, or any punishment that subjects a child to verbal abuse, ridicule, or intimidation is strictly prohibited. Children shall be disciplined with kindness and understanding. Discipline shall be related to the developmental state of the child and in line with the child's abilities to comply.

To determine if the Board of Review erred, we must look to the definition of "abuse" adopted by the Legislature. Pursuant to the applicable language of West Virginia Code § 49-1-201 (2018),[12]

> "[a]bused child" means:
> (1) A child whose health or welfare is being harmed or threatened by:
> (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment[.]

Patricia's statements, made to the CPS workers and the law enforcement officer, but out of the presence of all but the youngest child, an infant who was asleep during the exchange, referred to the children as "hellions" and "little liars." The bodycam footage does not, however, show Patricia yelling directly at the children or calling them derogatory names to their faces. At most, Patricia can be heard saying, "You did this," in the part of the house in which the children were located, presumably to the oldest child although the exchange occurred outside of the video's frame. Later, Patricia can be heard and seen on the bodycam footage calmly talking to the children and trying to comfort and soothe them as she escorts them to the CPS workers' vehicles. While placing the children in the vehicles and buckling them into their car seats, the video shows Patricia reminding the children to tell the truth.

---

[11] Bryan also agreed to abide by the DHS's discipline policy when the DHS placed the children with him and Patricia. *See* note 5, *supra*.

[12] Although we employ the statutory language in effect at time of the events giving rise to this appeal, we note that the pertinent definition of "abused child" has not changed following the Legislature's amendments to this statute. *Compare* W. Va. Code § 49-1-201 (2018) *with* W. Va. Code § 49-1-201 (2025).

On the record before us, we agree with the ICA's reversal of the Board of Review's decision. In short, the Board of Review's findings of fact were clearly wrong when it determined that Patricia's statements rose to the level of emotional abuse.[13]

Accordingly, we affirm the November 1, 2023, decision of the ICA.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[13] We likewise agree with the ICA's determination that the BOR erred in concluding that Patricia had attempted to inflict emotional abuse on the subject children.